IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEGAL ASSET FUNDING, LLC, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-01156 |
| v. | (JUDGE CAPUTO) |
| KEVIN VENESKI AND JUANITA VENESKI, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants Kevin and Juanita Veneski's Motion to Dismiss, or, alternatively, Motion for Summary Judgment, as to Plaintiff Legal Asset Funding, LLC's Complaint. For the reasons set forth below, the Court will GRANT in part and DENY in part Defendants' Motion for Summary Judgment. The Court has jurisdiction over this matter based on diversity of citizenship. 28 U.S.C. § 1332(a).

## BACKGROUND

Plaintiff Legal Asset Funding, LLC is a limited liability company existing under the laws of, and with its principal place of business in, the State of New Jersey. (Doc. 1 ¶ 1). Plaintiff is engaged primarily in the business of purchasing legal receivables, such as anticipated legal fees in pending cases. *Id*.

In late 1999, Plaintiff was contacted by Norman Leonard Cousins ("Cousins"), a New York attorney, about the possibility of Plaintiff purchasing a large legal contingency fee Cousins anticipated receiving in a medical malpractice case in which he represented

Kevin and Juanita Veneski, the Defendants in the case at bar.[1]  (Doc. 1 ¶ 11).  Cousins represented that he was entitled to a fee of one-third of Defendants' recovery. (Doc. 1 ¶ 14).  Such a representation would have been false as New York places a statutory cap on contingency fees awarded in medical malpractice cases, absent court approval of an application for additur of counsel fees.  *See* N.Y. JUD. L. 474-a (McKinney Supp. 2003).

After initially rejecting Cousins' request, on January 10, 2000, Plaintiff entered into a written contract with Cousins to purchase through assignment a portion of Cousins' anticipated fees and reimbursement of expenses in the Veneskis' case, in consideration for Plaintiff's advancing $125,000 to Cousins. (Doc. 1 ¶ 16).  The contract did not contain a representation by Cousins that he was entitled to a one-third fee. (Doc. 1-3 Ex. 4).

The Veneski case proceeded to trial and, on February 2, 2000, a jury awarded Kevin Veneski damages in the amount of $4,215,300. (Doc. 5 ¶ 10).  Juanita Veneski was awarded no damages. (Doc. 5 ¶ 11).  After the verdict, Cousins feared that his law practice would not be able to economically survive an appeal, and so offered Plaintiff the

---

[1] On June 6, 1997, Defendants retained Cousins to represent them on a contingency fee basis in a medical malpractice action against Queens-Long Island Medical Group, P.C. and Lawrence Sokolsky, M..D.  Kevin Veneski claimed he had been seriously injured as a result of medical malpractice and negligence. (Doc. 1 ¶ 3).  Juanita Veneski claimed damages resulting from the loss of her husband's services. (Doc. 5 ¶ 11). The retainer, per New York law, set a fee schedule providing that Cousins would receive 30% of the first $250,000 recovered, 25% of the next $250,000, 20% of the next $500,000, 15% of the next $250,000, and 10% of any excess.  N.Y. JUD. L. 474-a(2) (McKinney Supp. 2003).  The retainer also expressly provided that, in the event extraordinary services were required, Cousins could apply for greater compensation pursuant to N.Y. Jud. Law § 474-a(4) (McKinney Supp. 2003). (Doc. 5 ¶ 4).  Cousins and Defendants also entered into a Litigation Financing Agreement which provided that Cousins would advance the costs of litigation, that these advances would be treated as loans from Cousins to Defendants with interest accruing at 15% per year. (Doc. 5 ¶ 6).  On January 2, 1998, Cousins filed suit in Manhattan Supreme Court on Defendants' behalf. (Doc. 5 ¶ 7).

2

opportunity to purchase an additional portion of his contingency fee. (Doc. 1 ¶ 18).

Plaintiff responded that it was unsure whether the verdict would be sustained on appeal and whether Cousins' legal fee would cover an additional payment. (Doc. 1 ¶ 19). In response to Plaintiff's hesitance, Cousins provided Plaintiff with an affidavit executed by Kevin Veneski on February 26, 2000 to support a potential application for an additur to Cousins' contingency fee. (Doc. 19-2 ¶ 2).  In the affidavit (hereinafter referred to as the "additur affidavit"), Kevin Veneski stated that, in the event that Cousins was not given a one-third contingency fee by the court, he would nevertheless pay the difference in the form of a gift or gratuity. (Doc. 1-3 Ex. 5).  Along with the additur affidavit, Cousins himself represented to Plaintiff that he was entitled to a one-third contingency fee, which he allegedly insisted would easily cover another purchase by Plaintiff. (Doc. 19-2 Ex. C; Doc. 1 ¶ 20).  Thereafter, on February 28, 2000, Plaintiff and Cousins entered into an agreement providing that Plaintiff would advance an additional $125,000 to Cousins in exchange for an additional portion of Cousins' contingency fee. (Doc. 1 ¶ 25).  In the written agreement, Cousins represented that, of the $4,215,300 verdict, he was entitled to at least $450,000 in fees, but that he had the additur affidavit in which Kevin Veneski affirmed that Cousins was entitled to one-third of the recovery. (Doc. 19-3 Ex. C ¶ 1(a)).

Plaintiff alleges that the additur affidavit was only created to induce it to make an additional purchase, stating that, at the time the additur affidavit was executed and provided to Plaintiff, an application for additur of counsel fees was "only a hypothetical possibility because of the pending appeal." (Doc. 1 ¶ 22).  Plaintiff notes that no additur application was ever filed. *Id*.  Plaintiff avers that, but for the additur affidavit and Cousins' representations, it would not have paid additional funds to Cousins. (Doc. 1 ¶ 26).

On July 5, 2001, the Appellate Division of the New York State Supreme Court vacated the jury verdict and remanded the Veneski case for retrial. (Doc. 5 ¶ 16). Afterwards, Cousins again sought money from Plaintiff in exchange for giving them an additional portion of his potential contingency fee. (Doc. 1 ¶ 30). Plaintiff replied that it would not enter into another purchase agreement unless Cousins posted additional security. (Doc. 1 ¶ 31). Cousins agreed and posted such additional security in the form of assigning the Litigation Financing Agreement he had entered into with Defendants to Plaintiff. (Doc. 5 ¶ 21). Plaintiff also required that Defendants simultaneously enter into a consent agreement providing for this assignment and to promise that they would execute any and all documents to the benefit of Plaintiff to effectuate the assignment. *Id*. As another condition of advancing Cousins additional funds, Plaintiff proposed that Defendants guarantee all of Cousins' debt to Plaintiff. (Doc. 5 ¶ 19). Cousins refused to allow Defendants to do so. (Doc. 5 ¶ 20). Nevertheless, Plaintiff and Cousins then entered into a third purchase agreement on November 10, 2001 providing that Plaintiff would advance Cousins another $100,000 in exchange for an additional assignment of Cousins' legal fee in the Veneski case. (Doc. 1-4).

The Veneski case was retried in November of 2002. (Doc. 1 ¶ 36). After several days of trial, the case was settled for $3,369,472.[2] *Id.* At the time of the settlement, Juanita Veneski had discontinued her cause of action for the loss of her husband's

---

[2]Of this amount, $369,472 was to be paid by the malpractice defendants as a premium for an annuity for Kevin Veneski, $1,000,000 was to be paid by the malpractice defendants' primary insurance carrier, and $2,000,000 represented the portion the Liquidation Bureau of the State of New York assumed after the malpractice defendants' excess insurance carrier was dissolved and liquidated. (Doc. 5-1 ¶ 17; Doc. 1 ¶ 36).

services and waived any right to share in the proceeds of his recovery. (Doc. 5 ¶ 23).

Despite the large settlement, Cousins applied to the court only for the statutorily prescribed fee of $212,500 and, as previously mentioned, did not file an application for additur. (Doc. 1 ¶ 66). Plaintiff alleges that there is an understanding between Cousins and Defendants whereby Cousins accepted a substantially smaller "fee" for the representation and that Defendants have made or will make a "gift" to Cousins so that Cousins receives one-third of Kevin Veneski's recovery. (Doc. 1 ¶ 67). This, Plaintiff avers, was done so as to deprive it of its full share of the legal fees it had purchased. (Doc. 1 ¶ 68).

To date, Plaintiff has received only $217,490.17, which Cousins represented as the monies owed to Plaintiff pursuant to the assignment of the Litigation Financing Agreement between Cousins and Defendants. (Doc. 1 ¶ 42). Plaintiff claims that it is still owed $884,166.66, comprising its $250,000 investment from the first two purchases plus the $666,666.66 it was promised by Cousins.[3] (Doc. 1 ¶ 71).

On May 27, 2004, Plaintiff commenced this action by filing a Complaint in this Court. (Doc. 1).[4] The Complaint contains four claims: (1) promissory estoppel and imposition of a constructive trust (Count I); (2) fraud and/or misrepresentation (Count II);

---

[3] The Court is unclear as to how Plaintiff came to this sum, as $250,000 plus $666,666.66 amounts to $916,666.66, not $884,166.66.

[4] Prior to the initiation of the present case, Plaintiff filed a third-party complaint against Defendants in federal district court in New York which was dismissed without prejudice. *See Core Funding Group, LLC, v. Cousins*, No. 03 Civ. 5575 (S.D.N.Y. filed Nov. 24, 2003). Additionally, Plaintiff brought an action in New Jersey state court against Cousins and Defendants. *See Legal Asset Funding, LLC, v. Cousins*, No. HUD-C-1-04 (N.J. Super. Ct. Ch. Div. May 3, 2004). This action was dismissed as to Defendants for lack of personal jurisdiction.

(3) unjust enrichment and quantum meruit (Count III); and (4) an action for relief from a fraudulent conveyance under Pennsylvania's Uniform Fraudulent Transfers Act ("PUFTA"), 12 PA. CONS. STAT. § 5101, *et seq.* (Doc. 1 ¶¶ 52-74). On June 29, 2004, Defendants filed a Motion to Dismiss the Complaint for failure to state a claim, or, alternatively, Motion for Summary Judgment. (Doc. 4). These motions are fully briefed and ripe for disposition.

## LEGAL STANDARD - MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient

showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**I. Choice of Law**

A federal court sitting in diversity must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, Pennsylvania choice of law rules control. Here, the law of three states, New York, Pennsylvania, and New Jersey, may potentially be applicable. Because neither party argues for the application of New Jersey law, and because the only connection to New Jersey in the present case is that it is Plaintiff's state of incorporation and its principal

place of business, New Jersey law will not be applied.[5] As between the law of New York and Pennsylvania, Pennsylvania choice of law analysis first requires a court to determine whether the laws of the competing states actually differ. *Ratti. v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 702 (Pa. Super. 2000). If no conflict is present, no further analysis is necessary and the law of the forum will be applied. *Id.*

The Court finds no meaningful difference between Pennsylvania and New York law,[6] and, thus, no conflict is present.[7] Therefore, Pennsylvania law will be applied.

---

[5] The Court notes that the fee purchase agreements between Plaintiff and Cousins provided that New Jersey law would govern. However, these contractual choice of law provisions do not impact Plaintiff's tort and quasi-contract claims against Defendants, non-parties to the contracts.

[6] *See Knight Sec. L.P. v. Fiduciary Trust Co.*, 5 A.D.3d 172 (N.Y. App. Div. 2004) ("to establish a cause of action based on promissory estoppel, a plaintiff must allege (1) . . . [a] promise that is sufficiently clear and unambiguous, (2) reasonable reliance on the promise, and (3) an injury caused by the reliance"); *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. 1997) (to maintain an action for promissory estoppel, a plaintiff must allege "(1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise"); *McGrath v. Hilding*, 363 N.E.2d 328, 330 (N.Y. 1977) (to impose a constructive trust as an equitable remedy based on a claim of unjust enrichment, the following elements must be met: "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, (4) a breach of the promise, and (5) unjust enrichment"); *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value"); *Channel Master Corp. v. Aluminum Ltd. Sales Inc.*, 151 N.E.2d 833, 835 (N.Y. 1958) (the elements of common law fraud are "representation of a material existing fact, falsity, scienter, deception and injury"); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (under Pennsylvania law, the claim of fraud requires plaintiff to show: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by reliance").

[7] While New York has not adopted the Uniform Fraudulent Transfers Act as Pennsylvania has, but instead retains the Uniform Fraudulent Conveyance Act, N.Y. Debtor and Creditor Law § 270, *et seq.*, both Acts generally provide that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with the actual intent to defraud the creditor or without receiving fair consideration in exchange. As such, there is no meaningful difference between the two. The Court will thus apply the Pennsylvania Uniform Fraudulent Transfers Act (PUFTA), 12 PA. CONS. STAT. §

**II. Count I - Promissory Estoppel**

A cause of action for promissory estoppel arises when the following elements are present: "(1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. 1997). To recover on a claim of promissory estoppel, a plaintiff must allege an express promise. *Constar, Inc. v. Nat'l Distrib. Ctr., Inc.*, 101 F.Supp. 2d 319, 324 (E.D. Pa. 2000) (applying Pennsylvania law).

In the present case, Plaintiff alleges that Defendants, through the additur affidavit and through Cousins, promised Plaintiff, in order to induce it to advance funds to be used to prosecute their medical malpractice claim, that Cousins was entitled to a one-third contingency fee on any damages Defendants recovered.

The Court agrees that, when viewed in the light most favorable to Plaintiff, the additur affidavit, in which Kevin Veneski states, "I intend to give Mr. Cousins one-third (1/3) of the net recovery he has obtained for me in this action whether it be denominated a fee, gift or gratuity," combined with Cousins' transmittal of the additur affidavit to Plaintiff in order to receive additional funds, and then Cousins' subsequent failure to file an additur application with the court to increase his statutory fee on Kevin Veneski's settlement, is sufficient to create a triable issue of material fact on a claim of promissory estoppel as to Defendant Kevin Veneski. A reasonable jury could conclude that Kevin Veneski's additur affidavit was a promise which he reasonably expected would induce Plaintiff to advance funds to Cousins in order to prosecute Kevin Veneski's action, and

---

5101, *et seq.*, which is the law of the forum.

that Plaintiff relied on the additur affidavit when advancing funds to Cousins.

Conversely, the summary judgment record is lacking of any evidence indicating that Juanita Veneski made any promises to Plaintiff. She was not a party to the additur affidavit. She was awarded no damages at the original trial and abandoned her claim upon settlement. The Court finds it difficult to conclude that Plaintiff, when it entered into the fee purchase agreements with Cousins, was investing in Cousins' fee regarding Juanita Veneski's action for the loss of her husband's services.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of promissory estoppel (Count I) will be denied as to Defendant Kevin Veneski, and granted as to Defendant Juanita Veneski.

**III. Count II - Fraud**

Under Pennsylvania law, the claim of fraud requires Plaintiff to show by clear and convincing evidence: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *Hart v. Arnold*, 884 A.2d 316, 339 n.7 (Pa. Super. 2005).

Plaintiff alleges that Defendants made representations, through the use of the additur affidavit, that Defendants would give Cousins a one-third share of any net recovery in their medical malpractice action. These representations, Plaintiff avers, were to induce it to purchase more of Cousins' fee so that Cousins could continue to represent Defendants in their case. The additur affidavit, Plaintiff claims, was a "sham" in that it was never meant to be used in an additur application to increase Cousins' statutorily

capped fee, but only to deceive Plaintiff so that it would advance additional funds for litigation. Lastly, Plaintiff states that Defendants and Cousins have come to an "under-the-table" understanding whereby Cousins accepted the substantially lower statutory fee but would later receive money covertly from Defendants in order to deprive Plaintiff of its portion of the one-third legal fee Cousins allegedly represented he would receive.

The Court concludes that there is insufficient evidence in the summary judgment record that would enable a reasonable jury to find by clear and convincing evidence that Defendants defrauded Plaintiff. The alleged representations made by Defendants that they and Cousins intended to file an additur application, and if that failed, would nevertheless give Cousins one-third of the recovery was a statement of intent to do something in the future. Failing to follow through on such a statement of intention is not actionable in fraud. *See Krause v. Great Lakes Holdings, Inc.*, 563 A.2d 1182, 1187 (Pa. Super. 1989) (stating that the breach of a promise to do something in the future is not actionable in fraud). While Pennsylvania law does hold that "a statement of present intention which is false when uttered may constitute a fraudulent misrepresentation," *Tonkin v. Tonkin*, 94 A.2d 192, 196 (Pa. Super. 1953), Plaintiff has failed to present any evidence that Defendants did not intend to file the additur application, or to give Cousins one-third of the recovery, at the time of the alleged representations.[8] Plaintiff's bald assertion that Defendants and Cousins did not intend to file the additur application is insufficient to survive a motion for summary judgment when the burden of proof requires a showing of clear and convincing evidence. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of fraud (Count II) will be granted.

---

[8]The Court notes the inherent inconsistency in Plaintiff's arguments - that Defendants defrauded Plaintiff because when Kevin Veneski executed the additur affidavit, Defendants never intended to give Cousins one-third of their recovery, but that Defendants are now secretly conveying money to Cousins to deprive Plaintiff of its fair share.

**IV. Count III - Unjust Enrichment & Quantum Meruit**

The elements of unjust enrichment are (1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schneck v. K.E. David Ltd.*, 666 A.2d 327, 328-29 (Pa. Super. 1995).  The most significant issue involving the doctrine of unjust enrichment is whether the enrichment of the defendant is unjust. *Styer*, 619 A.2d at 350. The mere fact that the defendant may have benefitted as a result of the actions of the plaintiff is not enough to support a claim for unjust enrichment. *Meehan v. Cheltenham Twp.*, 189 A.2d 593 (Pa. 1963) (holding that, where two parties entered into a contract which ultimately benefitted a third party and one of the contracting parties breached the contract, in the absence of any misrepresentations by the third party, there is no claim for unjust enrichment against the third party to remedy the contracting party's breach, notwithstanding fact that third party is enriched, because third party's enrichment is not unjust); *see also D.A. Hill Co. V. Clevetrust Realty*, 573 A.2d 1005 (Pa. 1990) (same).

Plaintiff alleges that Defendants have been unjustly enriched in that they fraudulently induced Plaintiff to advance monies to Cousins, their attorney, to be used on their behalf, and have accepted and retained the benefits of Plaintiff's funds, namely the multimillion dollar settlement, and that equity demands that they should pay Plaintiff its fair share.

The Court finds that there is sufficient in the summary judgment record for a reasonable jury to find by a preponderance of the evidence that Kevin Veneski's additur affidavit, combined with Cousins' transmittal of it to Plaintiff and Cousins' subsequent failure to file an additur application for increased attorney fees, misled Plaintiff into

entering into the legal fee purchase agreements, to the ultimate benefit of Kevin Veneski, in that it allowed Cousins to continue prosecuting his action and obtain a $3,369,472 settlement for Kevin Veneski.  Accordingly, Defendant Kevin Veneski is not entitled to summary judgment on Plaintiff's claim of unjust enrichment (Count III).

Conversely, there is no evidence in the summary judgment record showing that Juanita Veneski in any way misled Plaintiff in order to induce it to enter into these contracts with Cousins.  Most notably, she did not execute the additur affidavit – only her husband did.  Accordingly, Defendant Juanita Veneski is entitled to summary judgment on Plaintiff's claim for unjust enrichment (Count III).

**V. Count IV - Pennsylvania Uniform Fraudulent Transfers Act**

Section 5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfers Act, 12 PA. CONS. STAT. § 5101, *et seq*., provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor."  Judgment may be entered against the transferee of the asset. 12 PA. CONS. STAT. § 5108(b).

Here, Plaintiff alleges that Cousins transferred funds from the settlement of the Veneskis' medical malpractice case to Defendants with the intent to hinder, delay or defraud Plaintiff out of the proceeds due to it under the three legal fee purchase agreements. (Doc. 1 ¶ 73). However, under PUFTA, "a transfer is not made until the debtor has acquired rights in the asset transferred." 12 PA. CONS. STAT. § 5106(4). An attorney acquires no rights in funds received in connection with the attorney-client relationship beyond the funds which represent fees owed him. *See* PA. RULES OF PROF'L

CONDUCT R. 1.15.  Here, Cousins had contracted with Defendants to receive his statutorily prescribed contingency fee of $212,500. (Defendants' Ex. 2); N.Y. JUD. L. § 474-a (placing a statutory cap on medical malpractice contingency fees unless a higher fee is approved by the court).  Cousins acquired no rights in the settlement funds beyond that amount because, under New York law, court approval of an additur application is a prerequisite.  This conclusion is not altered by Kevin Veneski's executing the additur affidavit, nor by Cousins' representations that he was entitled to one-third of Defendants' recovery.  As such, when Cousins allegedly conveyed the settlement funds to Defendants, there was no "transfer" under PUFTA.  Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's PUFTA claim.

**CONCLUSION**

For the above stated reasons, the Court will: (1) grant Defendant Juanita Veneski's motion for summary judgment on all counts of Plaintiff's complaint; (2) grant Defendant Kevin Veneski's motion for summary judgment on Count II (fraud) and Count IV (PUFTA) of Plaintiff's complaint; and (3) deny Defendant Kevin Veneski's motion for summary judgment on Count I (promissory estoppel) and Count III (unjust enrichment) of Plaintiff's complaint.[9]

An appropriate Order will follow.

| | |
|---|---|
| September 12, 2006 | s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

[9] The Court is of the opinion that summary judgment is not appropriate based on Plaintiff's allegedly unclean hands, as genuine issues of material fact are present. The Court also rejects Defendants' argument that Plaintiff's claims are barred by res judicata or collateral estoppel. The litigation that occurred in New York and New Jersey never reached the merits, having been dismissed without prejudice and dismissed for lack of personal jurisdiction. Consequently, the doctrines of res judicata and collateral estoppel do not apply. *See Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 877-78 (3d Cir. 1990); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 360 (3d Cir. 1983); FED. R. CIV. P. 41(b).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEGAL ASSET FUNDING, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>KEVIN VENESKI AND JUANITA VENESKI,<br><br>    Defendants. | CIVIL ACTION NO. 3:04-CV-1156<br><br>(JUDGE CAPUTO) |

**ORDER**

   **NOW**, this   12th   day of September, 2006, **IT IS HEREBY ORDERED** that:

   (1)   Defendant Juanita Veneski's Motion For Summary Judgment on All Counts of Plaintiff's Complaint (Doc. 4) is **GRANTED**.

   (2)   Defendant Kevin Veneski's Motion For Summary Judgment on Counts II and IV of Plaintiff's Complaint (Doc. 4) is **GRANTED**.

   (3)   Defendant Kevin Veneski's Motion For Summary Judgment on Counts I and III of Plaintiff's Complaint (Doc. 4) is **DENIED**.

                                                        s/ A. Richard Caputo
                                                        A. Richard Caputo
                                                        United States District Judge